UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| BRENDAN LABATTE,<br><br>Plaintiff,<br><br>vs.<br><br>KAREN GANGLE, PROSECUTOR FOR THE SWO, IN THEIR OFFICIAL CAPACITY; GARY GAIKOWSKI, CHIEF OF POLICE FOR SWO, IN THEIR OFFICIAL CAPACITY; HON. RUTH BURNS, JUDGE FOR THE SWO TRIBAL COURT, IN THEIR OFFICIAL CAPACITY; AND HON. MICHAEL SWALLOW, JUDGE FOR THE SWO TRIBAL COURT, IN THEIR OFFICIAL CAPACITY;<br><br>Defendants. | 1:24-CV-01014-ECS<br><br>OPINION AND ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR PRELIMINARY INJUNCTION |

This case is about whether Sisseton-Wahpeton Oyate ("SWO"), a federally recognized Indian Tribe, has inherent sovereign authority to exercise criminal jurisdiction over an enrolled tribal member for conduct committed on fee land located within the original boundaries of the Lake Traverse Reservation, a reservation the United States Supreme Court recognized as having been terminated in DeCoteau v. District County Court for the Tenth Judicial District, 420 U.S. 425 (1975). In its present posture, this Court cannot address the merits of Plaintiff's claim. Accordingly, for the reasons explained below, this Court grants Defendants' Motion to Dismiss for lack of subject-matter jurisdiction.

I.   **Factual and Procedural Background**

In October 2022, Officer Megan Lively, an officer for the Sisseton Police Department, observed a red Dodge Durango driving erratically within the city limits of Sisseton, South Dakota.

1

Doc. 1-4 at 2. Officer Lively followed the Durango until it stopped in a driveway a few blocks later. Id.

The driver of the red Durango, later identified as the plaintiff, Brendan LaBatte, fled from the Durango and ran towards Sisseton Housing, a housing project recognized as a dependent Indian community. Because the Sisseton housing project is a dependent Indian community, it is considered Indian country[1] for purposes of state and tribal criminal jurisdiction.[2] Id. Lacking jurisdiction over the housing project, Sisseton police called SWO tribal police to help apprehend LaBatte. Id. Before tribal police arrived on scene, LaBatte returned to his Durango. Id. Officer Lively approached LaBatte and ordered him out of the vehicle. Id. As he exited the car, Officer Lively attempted to restrain him by gaining control of his wrists, but LaBatte pushed her away and ran back to the Sisseton housing project. Id. Tribal police ultimately arrested LaBatte after finding him seeking refuge in the basement of a unit within the housing complex. Id. SWO charged him with one count driving under the influence ("DUI") and one count resisting arrest. Doc. 1-5. In January 2024, LaBatte moved to dismiss his tribal charges. Doc. 1-7. The tribal court denied LaBatte's motion. The tribal court did, however, dismiss the DUI charge, albeit without prejudice, after LaBatte initiated the present case.[3]

---

[1] "The term 'Indian country' . . . means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." 18 U.S.C. 1151(b).

[2] Doc. 19 at 5 n.5; United States v. South Dakota, 665 F.2d 837 (8th Cir. 1981). But cf. Owen v. Weber, 464 F.3d 1105, 1105 n.3 (8th Cir. 2011) (recognizing the analysis to determine dependent Indian communities has changed slightly since South Dakota but finding no reason to revisit South Dakota's holding).

[3] All parties agreed on the record at the motion hearing that SWO's exercise of jurisdiction over count two, the count charging LaBatte with resisting arrest, is proper. Therefore, the dispute in

The State of South Dakota also charged LaBatte with resisting arrest, reckless driving, and simple assault against a law enforcement officer. Doc. 19 ¶ 25; see Doc. 1-6. In February 2024, LaBatte pled guilty to simple assault against a law enforcement officer in the state-court action. Doc. 1-6 at 1. The state court sentenced LaBatte to two years' imprisonment with one year suspended. Id. at 2.

On July 11, 2024, LaBatte filed suit in this Court seeking declaratory and injunctive relief against Karen Gangle, prosecutor for SWO; Gary Gaikowski, chief of police for SWO; and the Honorable Ruth Barns and Michael Swallow, judges for SWO's tribal court. Doc. 1. LaBatte sued each defendant in their official capacity only. Id. LaBatte contends that Defendants, by having charged him with the DUI offense, exceeded the limits of SWO's criminal jurisdiction and violated his rights under the Fourth and Fourteenth Amendment to the United States Constitution, as well as his rights under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302. Doc. 1 at 1–3.

## II. Discussion

LaBatte's argument is straight forward. He contends that SWO's criminal jurisdiction over tribal members is limited to criminal acts that occur, at least in part, on Indian country. Even though the conduct giving rise to the DUI charges occurred within the original boundaries of the Lake Traverse Indian Reservation, LaBatte asserts SWO lacks jurisdiction to prosecute him tribally because the Lake Traverse Indian Reservation was terminated by "the Act of March 3, 1891, c. 543, 26 Stat. 1035," DeCoteau, 420 U.S. at 427–28, and the conduct relating to his DUI charges occurred entirely on fee land, therefore outside Indian country. Accordingly, LaBatte

---

this case hinges on the now dismissed DUI charge, raising issues of standing and mootness. But this Court need not address those issues given the absence of subject-matter jurisdiction here.

seeks a declaration that SWO has no criminal jurisdiction over himself or any other tribal member for criminal conduct committed on fee land within the exterior boundaries of the now terminated Lake Traverse Reservation. Doc. 19 at 9. LaBatte also requests an injunction prohibiting Defendants from prosecuting "LaBatte or any other tribal member" for crimes committed on fee land within the old exterior boundaries of the Lake Traverse Reservation. Id.

Defendants moved to dismiss LaBatte's suit under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(b)(7), arguing that (1) the case is moot, (2) he failed to exhaust tribal remedies, (3) he failed to join a required party, (4) SWO officials are immune from suit, and (5) he failed to state a claim upon which relief may be granted. Because subject-matter jurisdiction is a threshold question in every federal case, this Court addresses Defendants' Motion to Dismiss under Rule 12(b)(1) first.[4]

### a. Standard of Review

Rule 12(b)(1) permits a court to dismiss a case for lack of subject-matter jurisdiction. On a Rule 12(b)(1) motion to dismiss, the standard of review depends on whether Defendants are making a facial or factual attack on subject-matter jurisdiction. Stalley v. Cath. Health Initiatives, 509 F.3d 517, 520–21 (8th Cir. 2007). When a "defendant makes a facial attack to challenge whether the facts alleged in the complaint establish subject matter jurisdiction under Rule 12(b)(1), the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion." Nygaard v. Taylor, 563 F. Supp. 3d 992, 1010 (D.S.D. 2021) (citing Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). That is, "the Court must 'accept as true all factual allegations in the complaint, giving

---

[4] On August 14, 2024, this Court held a hearing on the parties' motions. In an Order Regarding Motion Hearing, Doc. 29, this Court informed the parties that it questioned whether it had jurisdiction to hear this case as postured and that it would hear argument on the merits of LaBatte's motions only after it was satisfied subject-matter jurisdiction existed.

4

no effect to conclusory allegations of law,' and determine whether the plaintiff's alleged facts 'affirmatively and plausibly suggest' that jurisdiction exists." Id. (quoting Stalley, 509 F.3d at 521). When reviewing a facial attack, "[t]he Court's review is limited to the face of the pleadings." Id. (citing Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914 (8th Cir. 2015)).

Conversely, when "the defendant attacks the factual basis for subject matter jurisdiction, the court can consider matters outside the pleadings, and the nonmoving party does not have the benefit of 12(b)(6) safeguards." Id. (citing Branson, 793 F.3d 914–15). "A factual attack occurs when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction." Id. (quoting Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018)). In such cases, "no presumptive truthfulness attaches to the plaintiff's allegations," and a "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (quoting Osborn, 918 F.2d at 730).

Here, Defendants' arguments appear to be a facial attack on this Court's subject-matter jurisdiction to hear LaBatte's request for declaratory and injunctive relief. Defendants are not disputing the facts as LaBatte alleged. Rather, Defendants argue that LaBatte's claim, as alleged, fails to establish subject-matter jurisdiction. Thus, this Court accepts LaBatte's allegations as true while undertaking its jurisdictional inquiry.

### b. Subject-Matter Jurisdiction

"In every federal case, the threshold requirement is jurisdiction . . . ." Wagstaff & Cartmell, LLP v. Lewis, 40 F.4th 830, 838 (8th Cir. 2022). "Federal Courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and Statute." Great Lakes Gas Trans. Ltd. v. Essar Steel Minn. LLC, 843 F.3d 325, 328 (8th Cir. 2016) (quoting Gunn v. Minton, 568 U.S. 251, 256 (2013)). "Subject-matter jurisdiction can never be waived or forfeited."

Wagstaff, 40 F.4th at 838 (quoting Gonzalez v. Thaler, 565 U.S. 134, 141 (2012)). LaBatte invokes jurisdiction under 28 U.S.C. § 1331—federal question jurisdiction, "which grants district courts 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" Great Lakes Gas Trans. Ltd., 843 F.3d at 329 (quoting 28 U.S.C. § 1331).

"Federal question jurisdiction exists if the well-pleaded complaint establishes . . . that federal law creates the cause of action," be it express or implied. Id. (quoting Williams v. Ragnone, 147 F.3d 700, 702 (8th Cir. 1998)). "A claim arises under federal law 'when federal law creates a private right of action and furnishes the substantive rules of decision.'" Cross v. Fox, 23 F.4th 797, 800 (8th Cir. 2022) (quoting Mims v. Arrow Fin. Servs., 565 U.S. 368, 378 (2012)). "If the plaintiff brings a claim under a federal statute that does not authorize a private right of action, the statute will not support jurisdiction under § 1331." Id. (citing Anthony v. Cattle Nat'l Bank & Tr., 684 F.3d 738, 739 (8th Cir. 2012)); Lakes & Park All. of Minneapolis. v. Fed. Transit Admin., 928 F.3d 759, 761–63 (8th Cir. 2019) (stating that an absence of a private right of action is fatal to jurisdiction). "Without jurisdiction [a] court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (citations omitted). Indeed, if a court decides "at any time" that it lacks subject-matter jurisdiction, "it must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### i. Constitutional Claim

As made clear at the August 14, 2024 hearing, LaBatte principally brought suit under the Fourth and Fourteenth Amendments to the United States Constitution, arguing that SWO violated his right to be free from unlawful searches and seizures by charging him for a DUI offense that allegedly occurred wholly on fee land. However, Indian tribes are "separate sovereigns pre-

6

existing the Constitution." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56 (1978). And "[t]ribal sovereignty . . . is 'a sovereignty outside the basic structure of the Constitution.'" Plains Com. Bank v. Long Fam. Land & Cattle Co., 554 U.S. 316, 337 (2008) (quoting United States v. Lara, 541 U.S. 193, 212 (2004) (Kennedy, J., concurring)). Indian tribes "have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority."[5] Santa Clara Pueblo, 436 U.S. at 56. Thus, "[t]he Bill of Rights does not apply to Indian tribes." Plains Com. Bank, 554 U.S. at 337 (citation omitted); Twin Cities Chippewa Tribal Council v. Minn. Chippewa Tribe, 370 F.2d 529, 533 (8th Cir. 1967) ("The guarantees of the Due Process clause relate solely to action by a state government and have no application to actions of Indian Tribes, acting as such.").

To be sure, "Indians are citizens of the United States entitled to the same constitutional protections against federal and state action as all citizens," but "the Constitution does not apply to restrict the actions of Indian tribes as separate, quasi-sovereign bodies." United States v. Cavanaugh, 643 F.3d 592, 595 (8th Cir. 2011) (citing Santa Clara Pueblo, 436 U.S. at 56). "Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government." Santa Clara Pueblo, 436 U.S. at 55 (quoting Worcester v. Georgia, 31 U.S. 515, 559 (1832)). Accordingly, the Bill of Rights does not apply to SWO or their tribal court proceedings against LaBatte, an enrolled tribal member. Thus, on the facts before this Court, the Fourth and Fourteenth Amendments provide no cause of action that invokes this Court's subject-matter jurisdiction.

---

[5] "Indian nations exercising governmental powers are not bound by federal constitutional limitations protecting individual rights against state or federal infringement . . . . Indian tribes are not states of the union within the meaning of the Constitution, and the constitutional limitations on states do not apply to tribes." 1 Cohen's Handbook of Federal Indian Law § 14.03 (LexisNexis 2024).

7

### ii. Indian Civil Rights Act

Alternatively, LaBatte argues SWO violated certain protected rights under the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302. Doc. 19 ¶ 9; but cf. Doc. 30 at 14 (stating that LaBatte cites to ICRA "as the corollary to the Bill of Rights for purposes of possible interpretation"). Through ICRA "Congress accorded a range of procedural safeguards to tribal-court defendants 'similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment.'" United States v. Bryant, 579 U.S. 140, 149 (2016) (citation omitted); Santa Clara Pueblo, 436 U.S. at 62–63 (noting how ICRA "modified the safeguards of the Bill of Rights to fit the unique political, cultural, and economic needs of tribal governments").

This Court also lacks subject-matter jurisdiction to hear LaBatte's claims under the ICRA. Congress authorized a writ of habeas corpus as the exclusive remedy for ICRA violations. Cross, 23 F.4th at 802–03; see 25 U.S.C. § 1303. "[T]he ICRA does not contain a private right of action to seek injunctive or declaratory relief in federal court . . . ." Cross, 23 F.4th at 802; Santa Clara Pueblo, 436 U.S. at 51–52 (holding the same).[6] "Absent a private right of action to enforce the ICRA in federal court for the relief sought, there can be no jurisdiction under 28 U.S.C. § 1331." Cross, 23 F.4th at 803 (citing Anthony, 684 F.3d at 739; Lakes & Parks, 928 F.3d at 762). Here, LaBatte is not seeking a writ of habeas corpus under the ICRA and is seeking only injunctive and declaratory relief. Thus, this Court concludes that it lacks subject-matter jurisdiction to hear Plaintiff's case and grants Defendants' motion to dismiss, Doc. 26, accordingly.

---

[6] "[T]he operation of the Declaratory Judgment Act is procedural only." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (citation omitted). Through the Act, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." Id. "[A]ctions seeking [relief other than a writ of habeas corpus] for tribal deprivations of rights must be resolved through tribal forums." Cross, 23 F.4th at 803 (quoting Goodface v. Grassrope, 708 F.2d 335, 338 n.4 (8th Cir. 1983)).

8

### III. Conclusion

For the above reasons, this Court concludes that it lacks subject-matter jurisdiction over LaBatte's claims and must therefore dismiss his suit against Defendants. In so doing, this Court does not speak to the merits of LaBatte's claims; it speaks solely to the procedural mechanism by which he brought those claims before this Court. Moreover, this Court refrains from addressing the remaining arguments raised by Defendants (i.e., standing and mootness, tribal exhaustion, failure to join an indispensable party, failure to state a claim upon which relief may be granted, and whether SWO officials are immune from suit, Doc. 27), which are not necessary to resolve this case as presented. Thus, it is hereby

ORDERED that Defendants' Motion to Dismiss, Doc. 26, is granted. It is further

ORDERED that Brendan LaBatte's Motions for Declaratory and Injunctive Relief, Docs. 20 and 2, are denied.

DATED this 30 day of August, 2024.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE